## ST. LOUIS & CAIRO RAILROAD CO.
### v.
### ISAAC D. BLACKWOOD.

STATUTE AGAINST EXTORTION—PUBLISHING OF SCHEDULE.— Under section 19 of chapter 114 Underwood's Statute, entitled Railroads, which provides for the railroad and warehouse commissioners making for each railroad corporation doing business in the State a schedule of maximum rates of charges for transportation of passengers, freights and cars, and makes it the duty of the commissioners to cause such schedules to be published for three successive weeks in some public newspaper published in Springfield in this State, the classification of freights made by the commissioners is a part of the schedule, and to be operative must be published the same as the schedule.

APPEAL from the Circuit Court of Jackson county; the Hon. DAVID J. BAKER, Judge, presiding. Opinion filed April 18, 1884.

Messrs. JUDD & WHITEHOUSE, for appellant.

Mr. JOHN H. BAIN, for appellee.

CASEY, J. This suit is based on section 19 of chapter 114 Underwood's Statute, entitled Railroads.

Appellee charges appellant with extortion; the section referred to provides for a recovery from the railroad corporation, in any form of action, of three times the amount of damages sustained by the party aggrieved, together with the costs of suit, and a reasonable attorney's fee to be fixed by the court when the same is heard, on appeal or otherwise, and taxed as a part of the costs in the cause.

Section 93, in substance, provides that the railroad and warehouse commissioners shall make for each railroad corporation doing business in this State, a schedule of reasonable maximum rates of charges for the transportation of passengers and freights and cars on each of said railroads; that said schedule shall in all suits brought against any such railroad corporation for the transportation of any passenger or freight or cars * * * * be deemed and taken in all the courts of this State as *prima facie* evidence that the rules therein fixed are reasonable maximum rates of charges for the transportation of passengers and freight and cars, upon the railroads for which said schedules may have been respectively made. The commissioners shall, as often as circumstances may require, change and revise said schedule.

When any schedule shall have been made or revised as aforesaid, it shall be the duty of said commissioners to cause publication thereof to be made for three successive weeks in some public newspaper published in the city of Springfield, in this State. The first shipment made by appellee and on account of which extortion is charged, was made on the 13th of April, 1882, and the shipments continued at intervals to September 30, 1882. Seven of the shipments were made before the 10th day of August, 1882, and five were made after that time. On the 10th day of August, 1882, a revised classification and schedule of reasonable maximum rates of charges for the transportation of passengers and freight took effect.

This schedule superseded all schedules prepared before that time.

Shipments made by appellee prior to that time must be regulated by the classification and schedules in force when

such shipments were made. The record shows a revised classification to have been published October 27th, November 3d and November 10th, 1881, and that a revised schedule was published November 17th, November 21st and December 1st, 1881.

In the certificate of railroad and warehouse commissioners, showing publication, the classification is referred to as " explanatory and forming a part of the schedule prepared and revised by said commissioners for the governing of class B, railroad companies. Between the classification and schedule just referred to is what purports to be another revised classification of freight, adopted by the railroad and warehouse commissioners, and forming a part of each of the schedules prepared for railroads, owned or operated in the State of Illinois, which was in force after December 1, 1881. This classification is to supersede all others, and take effect and be in force on and after April 10, 1882. It is signed by two of the railroad and warehouse commissioners.

We have carefully examined the record and been unable to find any certificate or other evidence showing that it was published in a public newspaper for three successive weeks, as required by the statute. The classification is " explanatory " and " made a part of the schedule." Without a reference to the classification the schedule would be meaningless. The requirement of the statute, that the schedules should be published, was as well for the people as the railroad corporation, and neither party would have even an indistinct idea of their rights or duties by an examination of what is termed a schedule alone. The classification is the key to what would otherwise be the hidden mysteries of the schedule, and is certainly a part of the schedule. So that if the commissioners have the power to make this classification separate and apart from the schedule, and make it explanatory of or a part of the schedule, it is clear that it must be published the same as the schedule. Then in this case we find that the schedule was revised by the classification taking effect the 10th of April, 1882. As we have seen, this revision was not published and was improperly allowed to go in evi-

dence. It could not be operative or take effect until it was published.

The claim of appellee is, that the extortion by appellant was in charging more than the maximum rate allowed by this classification and schedule, which was supposed to take effect the 10th of April, 1882, when, in fact, the classification of December 1, 1881, was in force until the 10th day of August, 1882.

The latter schedule contains this provision: "Freight will be billed at the actual weight, unless otherwise directed in the classification. 20,000 pounds will be considered a car load except in cases of light and bulky articles, when the car load shall be limited by the capacity of the car."

The shipments made prior to August 10, 1882, were each for less than a car load of 20,000 pounds; that is, they were each 16,000 pounds except one, on the 17th of April, 1882, which was for 24,000 pounds. So that there was nothing in the maximum rates fixed at the time, to prevent appellant from charging the rate fixed for less than car loads on six of the shipments.

In other words, appellant might have charged at the rate of fourteen cents per hundred pounds (that being the rate fixed at less than car loads of that character of freight) and not been liable to the charge of extortion, because it would have been a compliance with the schedule and classification in force at the time. For the first shipment of 16,000 pounds appellant might have been charged $22.40 instead of $13.30. The rates charged may be most unreasonably high, but it can never be called extortion, unless they exceed the maximum rates fixed by the railroad and warehouse commissioners. Counsel for appellee, to avoid this position, says, that "it is provided in the classification that in all cases where rates are fixed for articles of freight for less than car loads, the aggregate amount charged shall not exceed the car load rate for such articles."

This paragraph is not a part of the classification and schedule of December, 1881, under which these charges were made, but it is a part of the classification that was supposed

to take effect April 10, 1882, and, as we have seen, the latter schedule was not published as required by the statute, and never did become operative as maximum rates in whole or in part. The mere fact that appellant's railroad is what is termed a narrow gauge railroad, and that 16,000 pounds is the ordinary capacity of its freight cars, would make no difference. The commissioners, in the performance of their duty, say that a car load shall be 20,000 pounds. This may be a somewhat arbitrary rule and made without actual regard to the state of facts surrounding each railroad company. Still, it is a rule established by the commissioners in the interest of the people and the corporations. This rule is made to apply to what is in the classification called "Class B," which includes appellant and about forty other railroads in the State, the greater part of them being what is termed "standard gauge roads," but a number of them being narrow gauge roads. We are not prepared to say that the commissioners exceeded their authority in establishing this rule, but it would seem to indicate a necessity for a schedule for "each road."

Other questions are presented by the record in this case, but we do not deem it necessary to discuss them. We think the circuit court erred in holding that appellant was liable to the charge of extortion on the six shipments made prior to the 10th of August, 1882; therefore the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.